**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Carlos Rivera, *Plaintiff*, v. Michael Sheehan, et al. *Defendants.* | No. 20 CV 2396 Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Carlos Rivera sued various employees of the Cook County Department of Corrections ("CCDOC") for allegedly using excessive force against him during an altercation in December 2018 (the "Altercation") in violation of 42 U.S.C. § 1983. Because Rivera was incarcerated when he filed suit, he needed to comply with the Prison Litigation Reform Act ("PLRA"), which demands prisoners exhaust their administrative remedies prior to suing in federal court. 42 U.S.C. § 1997e(a). Defendants moved for summary judgment arguing Rivera failed to abide by this requirement. The Court agrees, and grants Defendants' motion.

**LOCAL RULE 56.1**

"On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). The statements serve a valuable purpose: they help the Court in "organizing the evidence and identifying disputed facts." *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). "To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3).

Any party, including a *pro se* litigant, who fails to comply with Local Rule 56.1 does so at their own peril. *Wilson v. Kautex, Inc.*, 371 Fed. Appx. 663, 664 (7th Cir. 2010) ("strictly enforcing Local Rule 56.1 was well within the district court's discretion, even though employee was *pro se* litigant"); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("even *pro se* litigants must follow procedural rules"); *Parker v. Fern*, 2024 WL 1116092, at *2 (N.D. Ill. Mar. 14, 2024) ("It is well-settled that a plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules.").

Here, Defendants filed a Rule 56.1 statement, and as required by Rule 56.2, served Rivera with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment." [Dkts. 111, 113.] This latter filing explains what a motion for summary judgment is, and what steps Rivera needed to take to respond to the motion. Notwithstanding these instructions, Rivera failed to respond to Defendants' statement of material facts. Nor did he file any additional facts. L.R. 56.1(b)(3). Consequently, the Court takes all its facts from Defendants and deems them admitted to the extent they are supported by evidence in the record. L.R. 56.1(e)(3); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

## BACKGROUND

When the Altercation occurred on December 28, 2018, Plaintiff was a convicted prisoner temporarily housed at the Cook County Jail, which the CCDOC operates. [Dkt. 111 ¶ 1.] Rivera remained at the Cook County Jail for the next three days, but was then transferred to an Illinois Department of Corrections ("IDOC") facility on December 31, 2018. [*Id.* ¶ 16; *see also* Dkt 111-10 at 2.][1] Defendants Sheehan, Bakowski, Beyer, Duharkick, Shaw, Smith, Kramer, and Bily were Cook County Sheriff's employees during the Altercation. [Dkt. 111 ¶¶ 2-10.]

The CCDOC maintains a formal Inmate Grievance Procedure ("Grievance Procedure") that explains the processes for filing a grievance. It is made available to all inmates at the Cook County Jail upon their arrival. [*Id.* ¶¶ 15, 17, 40.] Individual in Custody Services ("IIC") is the department responsible for receiving, processing, tracking, organizing, and maintaining records related to grievances submitted by inmates. [*Id.* ¶ 18.] According to the Grievance Procedure, inmates are instructed to complete a grievance form when they have been "injured, harassed, abused, or threatened." [*Id.* ¶ 20.] These forms are available in each living unit, but can also be obtained through the inmate's Correctional Rehabilitation Workers ("CRWs") or an IIC staff member. [*Id.* ¶¶ 21-22.] A blank piece of paper can also suffice if an official form is not available. [*Id.*]

Inmates can give completed grievance forms directly to a CRW or a Correctional Supervisor when those employees make their daily rounds. [*Id.* ¶ 27.] If an inmate needs to mail in a grievance form, the Grievance Procedure prescribes it must be sent to "CCDOC Inmate Services Department 2700 S. California Ave. Chicago, IL 60608." [*Id.* ¶ 25.]

The Grievance Procedure requires inmates to submit (or postmark) a grievance form within 15 days of the alleged offense. [*Id.* ¶ 23.] If an inmate receives an adverse decision, he then has 15 days to appeal. [*Id.*] If his appeal is denied, then he has exhausted his administrative remedies and may file a lawsuit. [*Id.*] Put differently,

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

to properly exhaust the CCDOC's administrative remedies, the Grievance Procedure requires inmates to both timely file and appeal their grievance (within 15 days of the offense or decision).

Rivera was aware of and availed himself of the Grievance Procedure prior to the Altercation. Indeed, Rivera submitted 46 grievances before December 28, 2018, (32 of which were deemed compliant), and timely appealed some of those that received an adverse decision. [*Id.* ¶¶ 41-42.]

In this instance, however, Rivera waited until January 18, 2019—21 days after the Altercation—to attempt to file a grievance. [*Id.* ¶ 33.] When he did so, Rivera submitted the form to IDOC, which is a separate entity with distinct grievance procedures from CCDOC. During his deposition, Rivera admitted he took longer than 15 days to file a grievance for the Altercation, and testified he did so because he "wanted to be precise" and ensure he included all pertinent detail. [*Id.* ¶ 34; Dkt. 111-3 at 16.] IDOC responded to Rivera's grievance on February 6, 2019, informing him that he could not grieve incidents at CCDOC through the IDOC grievance process. [Dkt. 111 ¶ 36.]

On or about February 28, 2019, Rivera mailed a grievance to CCDOC regarding the Altercation. [*Id.* ¶ 37.] In a cover letter with the mailing, Rivera apologized for the delay, blaming it on his confusion with the distinction between IDOC and CCDOC, as well as his transfer shortly after the Altercation. [*See* Dkt. 111-7 at 2.] On April 4, 2019, CCDOC responded to Rivera, informing him that his grievance was non-compliant because "[t]he grieved issue did not occur within the last 15 calendar days nor is it an allegation of sexual assault, harassment, voyeurism, or abuse." [Dkt. 111-7 at 6.] Rivera then sued.[2]

## ANALYSIS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of proving the absence of such a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All facts and reasonable inferences are construed in the light most favorable to the nonmoving party. *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016).

The PLRA requires inmates to exhaust their administrative remedies before initiating a federal civil rights lawsuit. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other

---

[2] It is not clear whether Rivera appealed the CCDOC's decision before filing suit.

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Miles v. Anton*, 42 F.4th 777, 780 (7th Cir. 2022) ("a suit filed before the prisoner has exhausted these remedies must be dismissed") (cleaned up). Accordingly, if a correctional facility has an internal administrative grievance system through which an inmate can seek to correct a problem, the inmate must utilize that system before filing a claim in federal court. *See Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020). Courts follow "a strict compliance approach to exhaustion under the PLRA." *Williams v. Rajoli*, 44 F.4th 1041, 1045 (7th Cir. 2022). The burden of proof is on the defendant to demonstrate the prisoner failed to exhaust his administrative remedies. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

Defendants move for summary judgment based on Plaintiff's failure to exhaust his administrative remedies regarding the Altercation. Specifically, Defendants argue the two grievances Plaintiff filed did not comply with CCDOC's Grievance Procedure because Rivera waited more than 15 days after the Altercation to submit a grievance. [Dkt. 112 at 1, 7-10.] A prisoner who fails to timely file his grievance according to the facility's procedures cannot satisfy the exhaustion requirement. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("when the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited.").

Defendants are correct. Rivera's first grievance was erroneously filed with IDOC 21 days after the Altercation, and was rejected because IDOC was not involved. Even if Rivera sent the grievance to CCDOC, it was nearly a week late. After receiving IDOC's response on February 6, 2019, Rivera then waited another three weeks, until February 28, 2019, to send a grievance to CCDOC. By then, Rivera's grievance was untimely and CCDOC rejected it under the Grievance Procedure. Plaintiff's failure to comply with CCDOC's grievance process renders his claim unexhausted. *Kaba*, 458 F.3d 678 at 684; *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) (an inmate must file grievances in the place, time, and manner specified by the facility's rules to administratively exhaust).

The question thus becomes whether Rivera had a legally cognizable excuse for not complying with the Grievance Procedure. There are three such circumstances. The first is where the grievance process is "so opaque … no ordinary prisoner can discern or navigate it." *Wallace v. Baldwin*, 55 F.4th 535, 542 (7th Cir. 2022). The second occurs when "the prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* (quoting *Ross v. Blake*, 578 U.S. 632, 644 (2016)). The third situation is when the grievance process is a "dead end" because "officers [are] unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.*

4

Rivera's response brief focuses on why his grievance was untimely, which, in its entirety, states as follows:

> My reason for Grievance Procedure being late is [be]cause while I was housed in 2 north psych wing for the few days we are not given any pens or grievances. They say we can turn a pen into a weapon to harm ourselves and others. So we are not allowed to have any. My purpose for turning the grievance so late was [be]cause coming back to IDOC I had to wait until I purchased a pen on commissary to write with. Then me struggling with all my severe injuries physically and mentally having to write and think precisely on everything and everyone the incident occurred with took a little extra time. A lot occurred during that altercation. I went through the IDOC grievance process, then when I got the response about it having to get sent to Cook County Correctional Center. My transfer also plays a part in my delay.

[Dkt. 118 at 1.] Although Rivera focuses on the right issue, his response is unavailing because it does not fall within any of the noted exceptions. Indeed, Rivera does not cite to any factual or legal support at all, which is enough to sink his claims on summary judgment. *Rahn v. Bd. of Trs. of N. Ill. Univ.*, 803 F.3d 285, 295 (7th Cir. 2015) (a party that fails "to cite any legal authority in support of their argument" waives it).

As an initial matter, Rivera's explanation for why he did not timely file his grievance is inconsistent with his deposition testimony. During his deposition, Defendants' counsel specifically asked Rivera why he waited more than 15 days to file the grievance to IDOC. Rivera responded he had "to get everything in order … to make sure that [he] missed nothing out." [Dkt. 111-3 at 16.] Rivera added he "wanted to be precise. So, you know, I had to make sure that everything was right and everything was where it needed it to be. It took me time to write … From when the incident occurred, I wanted to be specific on everything that happened." [*Id.*]

Rivera cannot create a genuine issue of material fact with "testimony" inconsistent with what he said at his deposition. See *Abraham v. Washington Grp. Int'l, Inc.*, 766 F.3d 735, 741 (7th Cir. 2014) ("a deponent may not use an affidavit sworn to after a deposition to contradict deposition testimony without giving a credible explanation for the discrepancies"); *see also James v. Hale*, 959 F.3d 307, 315 (7th Cir. 2020) (explaining that, in absence of exceptions not relevant here, courts should "disregard a 'sham' affidavit—typically an affidavit that contradicts prior deposition testimony.").

Rivera's arguments also fail on the merits. It is undisputed Rivera was aware of CCDOC's Grievance Procedure as early as August 2013 when he arrived at Cook County Jail. [Dkt. 111 ¶¶ 15, 40.] The Grievance Procedure explains how and when

to submit a grievance. Rivera availed himself of this process on dozens of occasions prior to the Altercation. [*Id.* ¶¶ 41-42.] Consequently, the Grievance Procedure cannot be described as "opaque"; an ordinary prisoner such as Rivera was able to navigate it time and again. *Wallace*, 55 F.4th 535, at 542. And while Rivera's transfer to an IDOC facility during the 15-day period added a level of complexity to filing, the grievance form Rivera submitted to IDOC was still untimely by nearly one week. Regardless, ignorance of the correct procedures is not a valid excuse. *Twitty v. McCoskey*, 226 F.App'x 594, 596 (7th Cir. 2007) (holding that a prisoner's alleged lack of knowledge of grievance procedures does not excuse noncompliance with available administrative remedies).

The Court likewise finds no dispute exists as to whether prison administrators thwarted Rivera from filing the grievance. Again, Rivera's transfer may have subjectively confused him, but there is no indication CCDOC transferred Rivera for the purpose of stopping him from filing a grievance; he does not even make the argument. [*See* Dkt. 118.] This notion is undercut further still by the fact Rivera did file a grievance (albeit six days too late). At most, there is a "metaphysical doubt" Rivera was transferred to disrupt his ability to file a grievance, but that is not enough to survive summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

As for Rivera's other proffered reasons, he argues he needed to purchase a pen from IDOC commissary before he could write the grievance. [Dkt. 118.] But Rivera does not take the next step and contend this was a "machination, misrepresentation, or intimidation" by IDOC staff to stop him from filing a grievance. *Wallace*, 55 F.4th 535, at 542. He does not argue, for example, IDOC staff withheld Rivera's ability to access a pen, or falsely represented they would provide him a pen but failed to do so. Rivera also fails to provide any details on whether he asked for a pen to write a grievance, whether he had enough money in his commissary account to purchase a pen, when he ultimately obtained a pen, or any other details to provide substance to this argument.

Rivera's final argument is that he was struggling with injuries sustained during the Altercation, which impeded his ability to think and write about what occurred. [Dkt. 118.] Even if this argument fit within one of the three *Wallace* exceptions, Rivera has failed to provide any documents, such as medical records, to support this assertion. Arguments without evidence is not enough to defeat summary judgment. *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.")

Ultimately, Rivera has not raised any arguments which create a genuine issue of material fact on whether he exhausted his administrative remedies. Rather, the record establishes Rivera filed two untimely grievances. Because he did not exhaust

6

his remedies, he cannot sue. *Kaba*, 458 F.3d 678, at 684. Defendants are entitled to summary judgment.

## Conclusion

For the reasons stated above, the Court grants Defendants' motion for summary judgment and dismisses this case without prejudice for failure to exhaust.

If Plaintiff wants to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If he appeals, he will be liable for the $605 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court that specifies the issues he wants to raise on appeal. *See* Fed. R. App. P. 24(a)(1).

Enter: 20 CV 2396
Date: May 2, 2024

Lindsay C. Jenkins
United States District Judge